## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE HOOVER COMPANY, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06 CV 4705 |
| BISSELL HOMECARE INC, | ) ) | Hon. James B. Zagel |
| Defendant. | ) ) | |

### JOINT MOTION FOR ENTRY OF A CONSENT DECREE

Plaintiff The Hoover Company ("Hoover") and Defendant BISSELL Homecare, Inc. ("BISSELL") jointly move the Court for entry of a Consent Decree. In support of their motion, the parties state as follows:

1. On August 31, 2006, Hoover brought this action against BISSELL alleging false advertising under the Lanham Act and related state law claims.

2. On January 31, 2007, the parties entered into a Settlement Agreement resolving all of the claims at issue in the case.

3. The parties desire that the Court retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement. To that end, the parties have prepared the Consent Decree attached hereto as Exhibit 1.

WHEREFORE, the parties request that this Court enter the Consent Decree attached hereto as Exhibit 1.

| | |
|---|---|
| /s Kimball R. Anderson | /s Dawn M. Beery |
| One of Their Attorneys | One of Their Attorneys |
| Kimball R. Anderson<br>Stephen P. Durchslag<br>Tracy J. Allen<br>WINSTON & STRAWN LLP<br>35 W. Wacker Drive<br>Chicago, IL 60601<br>Phone: (312) 558-5600<br>Fax: (312) 558-5700 | Stephen A. Wood<br>Matthew C. Luzadder<br>Dawn M. Beery<br>Kelley Drye & Warren LLP<br>Attorneys for BISSELL Homecare, Inc.<br>333 West Wacker Drive<br>26th Floor<br>Chicago, IL 60606<br>Phone: (312) 857-7070<br>Fax: (312) 857-7095<br><br>J.A. Cragwall Jr.<br>WARNER NORCROSS & JUDD<br>900 Fifth Third Center<br>Grand Rapids, MI 49503-2487<br>Phone: (616) 753-2123<br>Fax: (616) 222-2123<br><br>Brian T. Lang<br>WARNER NORCROSS & JUDD<br>400 Terrace Plaza<br>P.O. Box 900<br>Muskegon, MI 49443<br>Phone: (231) 727-2612<br>Fax: (231) 728-7712 |

# EXHIBIT 1

**CONSENT DECREE**

JAMES B. ZAGEL, District Judge:

Pursuant to the joint motion of the parties, this Court enters the following Consent Decree:

**FINDINGS**

WHEREAS, on August 31, 2006, The Hoover Company ("Hoover") brought this action against BISSELL Homecare Inc. ("BISSELL") for false and deceptive advertising in violation of Section 43(a) of the Trademark Act of 1946 (15 U.S.C. § 1051, et seq., as amended (the "Lanham Act")), 15 U.S.C. § 1125(a) and related state law claims;

WHEREAS, BISSELL denies Hoover's claims;

WHEREAS, on January 31, 2007, the parties entered into an immediately effective settlement agreement (the "Settlement Agreement") which resolved Hoover's claims in the litigation:

**ORDER**

**NOW THEREFORE**, upon the consent of the parties hereto, **IT IS on this ___ day of February 2007 HEREBY ORDERED, ADJUDGED and DECREED** that the parties shall comply with the Settlement Agreement, certain terms of which follow below. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of the Settlement Agreement.

Certain terms of the parties' Settlement Agreement are set forth below:

1. **Scope of Agreement**. This Agreement applies to all advertising, promotion, and marketing in any media and in any form relating to upright deep cleaning products with the

HOOVER or BISSELL brand name or any upright deep cleaning products manufactured by or for Hoover or Bissell, without regard to the brand name under which it is sold.

2. **Definitions**.

   a. **"Comparative Cleaning Claims"** shall mean all outcleans and comparative cleaning claims, including, but not limited to, "outcleans all leading brands," "cleans 2X better than all other leading brands," "outperforms the competition," "cleans carpet better than ANY leading brand," and "outcleans all other leading brands . . . period."

   b. **"Parity Cleaning Claims"** shall mean parity cleaning claims, including, but not limited to, "no other leading brand cleans carpet better."

   c. **"Comparative Heat Claims"** shall mean all comparative claims regarding heat, including, but not limited to, "heat cleans better," "has heat where others don't," and "directs heat to the floor, where it is needed most."

3. **Discontinuance of Claims**. The parties and their directors, officers, agents, servants, employees, corporate parents, subsidiaries, affiliates, related companies, successors and assigns and all persons or entities in active concert or participation with them, or any of them, shall voluntarily discontinue and eliminate all Comparative Cleaning Claims, Parity Cleaning Claims, and Comparative Heat Claims (jointly, the "Prohibited Claims"), on all advertising, including

   (a) in print advertising, internet advertising, national media, TV, and on the companies' websites immediately;

   (b) on product packaging shipped to retailers by March 31, 2007;

   (c) on point-of purchase materials, including in-store displays, display models, merchandising, and other in-store materials, shipped to retailers

> by March 31, 2007 in the following stores: Wal-Mart, Sears, Target, Kohl's, Best Buy, Sam's Club, Costco, Home Depot, Lowe's, Bed Bath and Beyond, Kmart, Linens and Things, and Circuit City. The parties may work jointly to hire an independent third party to perform such corrective action. Eric Henderson of Hoover (phone number ((330) 499-9200 ext. 2138) and Truxton Wildes of Bissell ((616)791-0616) are hereby designated as their parties' respective representatives to liaison with each other and with the independent third party. Any fees charged by the third party will be split equally by the parties; and
>
> > (d) all other merchandising aids, product hangtags, shelf talkers, and sales and educational materials by March 31, 2007.

Immediately upon the Effective Date of this Agreement, both parties shall promptly stop manufacturing products with stickers which contain Prohibited Claims on the product and/or on the product packaging. In no event shall any product, product packaging or other advertising materials containing Prohibited Claims be shipped to retailers after March 31, 2007. Additionally, neither party will make any new Prohibited Claims for the duration of the Agreement. Nothing in this Agreement shall prohibit Hoover from making the claim "directs heat to the floor" or similar heat-related claims if the words "where it is needed most" or words of similar import are omitted. Nothing in this Agreement shall prevent Bissell from making the claim "The only deep cleaner with an on-board heater" or similar language highlighting the patented heat feature of the Bissell deep cleaners.

4. **Reference To The Other's Brand**. The parties hereby agree not to mention the other party's brand name in any media or in any of the materials referenced herein.

5. **Third Party Cleaning Performance Claims**. In the event a third party advertises or otherwise makes a comparative cleaning performance claim of the type prohibited under this Agreement regarding upright deep cleaners, Hoover and Bissell, at their sole individual discretion, may make cleaning performance advertising claims specifically referencing the third party and/or the third party product's cleaning performance.

* * * * * *

8. **Dismissal**. Within (5) business days of the Effective Date of this Agreement, Hoover and Bissell shall jointly seek entry in the Michigan and Illinois Actions of an agreed Stipulation and Order for Dismissal With Prejudice in the form attached as Exhibits A and B and file with the Michigan and Illinois courts Joint Motions for Entry of a Consent Decree incorporating this Settlement Agreement. Each party agrees to forever to waive and release any damage claims, known or unknown, that the parties ever had, now have, or hereafter can, shall or may have, for, upon, or by reason of claims asserted or which could have been asserted arising out of the facts alleged in the Michigan and Illinois Actions. Each party shall bear its own legal fees and costs incurred in connection with the Michigan and Illinois Actions and this Agreement. This Agreement does not preclude the parties from seeking legal relief, including damages, for any advertising claims made by Hoover or Bissell after the expiration date of this Agreement.

9. **No Admission of Liability**. This Settlement Agreement shall not constitute an admission by either party regarding the merits of the others' claims in the Complaints or any motions for preliminary injunction filed in the Michigan and Illinois Actions and shall not be used by either party in this or any other litigation, arbitration, or other quasi-judicial proceeding as an admission of fault or liability by the opposing party.

10. **Notice of Violation of Settlement Agreement**. To the extent one party believes the other party has violated any portion of this Settlement Agreement, it shall provide that party with notice thereof at least 10 days before bringing an action of any sort regarding the alleged violation. The parties shall negotiate in good faith to resolve their differences before any action is filed. Neither party shall initiate any legal action in anticipation of an enforcement action.

* * * * * *

12. **Cooperation on Industry Standard**. The parties will provide all information and other materials requested by the ASTM F11.35.01 Extractor Performance Task Group ("Task Group") in the October 24, 2006 meeting minutes, attached hereto as Exhibit C, and comply with any other requests set forth therein on a timely basis. Additionally, the parties shall cooperate with each other and the members of the Task Group in exchanging data, procedures, and videotapes of in-lab testing on a timely basis to assist in the development of a final ASTM standard. In addition to working with the Task Group, representatives of Hoover and Bissell shall communicate and work together directly and in good faith, separately from the Task Group, in order to facilitate and expedite the development of a final ASTM standard. The representatives of Hoover and Bissell shall be free to keep the Task Group informed of their discussions and activities to facilitate the development and adoption of a standard.

13. **Duration of Settlement Agreement**. This Settlement Agreement shall remain in effect until a final extractor cleaning effectiveness test method is approved by the ASTM F11 Subcommittee for submission to the ASTM main committee and society for balloting, or until July 31, 2008, whichever is earlier.

\* \* \* \* \*

19. **Confidentiality**. Except as hereinafter provided or as required by order of a court of competent jurisdiction, the parties agree to keep the text of this Agreement and the terms of this settlement confidential, including the discussions, negotiations and agreements leading up to this settlement, and not to disclose the same to any third party without advance written consent of the other party hereto. The parties agree that this Agreement and the terms of settlement may be disclosed to the parties' attorneys, banks, suppliers, non-employee directors, auditors, or other consultants having a need to know such information, each of whom shall have first agreed to be

bound by the confidentiality obligations set forth above. The parties (and their representatives) shall not divulge the nature or terms of this Agreement in any public communication, advertising or promotional materials or media to consumers or the trade, except they may inform individual retailers that the cases have been settled under confidential terms which include an agreement by Hoover and Bissell to withdraw their comparative upright deep cleaning claims. However, neither party may issue a press release or public statement regarding the resolution of the Michigan or Illinois Actions, and in response to any question asked by a representative of the media, a party shall report only that the cases have been settled under confidential terms and shall otherwise decline comment. A breach of this confidentiality provision shall be deemed a material breach of this Agreement.

20. **Effective Date**. The Effective Date of this Agreement is the date that the last signature is executed.

_____
JAMES B. ZAGEL
UNITED STATES DISTRICT JUDGE

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THE HOOVER COMPANY, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06CV4705 |
| BISSELL HOMECARE INC,, | ) ) | Judge Zagel |
| Defendant. | ) ) | |

**STIPULATION AND ORDER FOR DISMISSAL WITH PREJUDICE**

The undersigned parties, having entered into a settlement agreement, agree and stipulate that:

1. The action is hereby dismissed with prejudice subject to the Settlement Agreement.

2. Each of the parties hereto is to bear its own costs and attorneys' fees.

By:_____

Dated: January ____, 2007

Stephen A. Wood
Matthew C. Luzadder
Dawn M. Beery
KELLEY DRYE & WARREN
333 West Wacker Drive
26th Floor
Chicago, IL 60606
Phone: (312) 857-7070
Fax: (312) 857-7095

Christopher J. Lind
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
Courthouse Place
54 W. Hubbard Street
3rd Floor
Chicago, IL 60610
Phone: (312) 494-4406
Fax: (312) 494-4440

J.A. Cragwall
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
Phone: (616) 753-2123
Fax: (616) 222-2123

Attorneys for BISSELL HOMECARE INC.


By:_____

Dated: January ___, 2007

Kimball R. Anderson
Stephen P. Durchslag
Tracy J. Allen
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

Attorneys for THE HOOVER COMPANY

**IT IS SO ORDERED**

                                                _____
                                                **James B. Zagel**
                                                **Judge**

**Exhibit B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| BISSELL HOMECARE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06-CV-0464 |
| ) | |
| THE HOOVER COMPANY, ) | Hon. Robert Holmes Bell |
| ) | |
| Defendant. ) | |

**STIPULATION AND ORDER FOR DISMISSAL WITH PREJUDICE**

The undersigned parties, having entered into a settlement agreement, agree and stipulate that:

1. The action is hereby dismissed with prejudice subject to the Settlement Agreement.

2. Each of the parties hereto is to bear its own costs and attorneys' fees.

By: _____

Dated: January ___, 2007

J.A. Cragwall
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
Phone: (616) 753-2123
Fax: (616) 222-2123

Attorneys for BISSELL HOMECARE INC.

By: _____

Dated: January ___, 2007

L.R. Roegge
Karl W. Butterer, Jr.
SMITH HAUGHEY RICE & ROEGGE
200 Calder Plaza Building
250 Monroe Avenue, N.W.
Grand Rapids, MI 49503-2251
(616) 744-8000

Kimball R. Anderson
Stephen P. Durchslag
Tracy J. Allen
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

Attorneys for THE HOOVER COMPANY

**IT IS SO ORDERED**

_____
**Robert Holmes Bell**
**Chief Judge**





Address 100 Barr Harbor Drive
PO Box C700
W. Conshohocken, PA
19428-2959 | USA

Phone 610.832.9500
Fax 610.832.9666
Web www.astm.org

**Committee F11 on VACUUM CLEANERS**

Chairman: JOHN N BALOUGH, Hoover Co, 2526 Mcdowell St, Ne, Canton, OH 44721-3368, (330) 492-8979, e-mail: jnbalough@juno.com
First Vice Chairman: DARRELL NIESCHWITZ, H-p Products Inc, 512 W Gorgas St, Louisville, OH 44641-3912, (330) 875-5556, Fax: (330) 875-7584, e-mail: dnieschwitz@hpproducts.net
Second Vice Chairman: RONALD D BATTEMA, Compliance Consulting Inc, 92 Tulip Grove Cir Unit 16, Bristol, TN 37620, (423) 878-3366, Fax: (423) 878-3368, e-mail: rbattema@charter.net
Recording Secretary: GARY H ASBURY, Professional Testing Lab Inc, 714 Glenwood Place, Dalton, GA 30721, (706) 226-3283, Fax: (706) 226-6787, e-mail: protest@alltel.net
Membership Secretary: JONATHAN MINER, Bissell Inc, 2345 Walker Nw, Grand Rapids, MI 49544, (616) 791-0601, Fax: (616) 791-0634, e-mail: jon.miner@bissell.com
Staff Manager: BRYNN IWANOWSKI, (610) 832-9640, Fax: (610) 832-9666, e-mail: biwanows@astm.org

# F11.35.01 – Extractor Performance Task Group Minutes
## October 24, 2006

Attendees:

| | |
|---|---|
| Gary Asbury | PTL |
| Ken Barrick | Electrolux |
| Jim Bartula | Royal |
| Ron Battema | CC |
| Grahame Capron-Tee | IEC |
| Brynn Iwanowski | ASTM |
| Dan Miller | Hoover |
| Luther Myers | Textile Innovators |
| Bill Tracy | Panasonic |
| Steve Pastor | Kirby |
| Ramona Saar | AHAM |
| Bob Bozzelli | Royal |
| Ken Lee | BISSELL |
| Rick Alberts | Electrolux |
| Sid Hartman | Wal-Mart |
| Ken Wills | Windsor |
| Jonathan Miner | BISSELL |
| Greg Bilek | Hoover |

Minutes:

The Task Group scope was read.

Minutes from April 2006 were approved.

Results of the "ruggedness" testing were discussed. The difference between the labs' cleaning scores appears to be caused in the extraction step. The virgin and soiled L, a, and b values are pretty close from lab to lab.

Bissell's cleaning scores were higher for all units than the other labs. Next, generally, were Electrolux scores followed by Royal and Hoover together.

Water hardness was discussed as a possible cause, but Hoover and Bissell have tested with distilled water in the past and have not seen an effect.

Each lab is to provide the following information to Jim and Jon in an effort to identify possible causes:

1. Carpet panel dimensions
2. Extracted area dimensions (e.g. Bissell's cleaning stroke is longer than the test panel)
3. Amount of pellets used to get to $\Delta E$ of 12
4. Amount of steel balls used for embedding
5. Plush carpet F608 score of vacuum used to vacuum soiled carpets
6. Tumbling speed (rpm) and circumferential speed (fpm)
7. Typical time delay between grooming and reading carpets
8. Time delay between soiling and extracting
9. Accurate description of vacuuming pattern, number of strokes, and speed, including amount of any overlap in center of panel
10. Weight of the carpet as pulled from the tumbling drum and after vacuuming (to determine the amount of pellets embedded in the carpet)

From memory, the test carpet panel sizes in the various labs are as follows, but are to be confirmed:

- Royal = 27 x 54
- Electrolux = 13 x 30
- Bissell = 16 x 27
- Hoover = 19 x 46
- PTL = 10 x 40 (and this size used 2,000 g of steel balls for embedding)

Each lab is to prepare a video of their execution of the ASTM Draft method and send it quickly to Jim at Royal. Jim will cut and paste them into the desired format and order and distribute to Task Group members for review before the virtual meeting.

We will have a virtual meeting at 10:00 AM on December 13th to discuss the videos and to consider any of the potential causes for differences in the cleaning scores.

After the virtual meeting and any resulting changes to the Draft method (e.g. standardizing the density of steel balls for embedding), Royal will retest the Bissell extractor and then send the unit from lab to lab. Bissell will provide detergent when requested. We may elect to send the three vacuums along with the extractor.

Several aspects of the test method had been tabled in order to simplify the Draft for evaluation. Time did not allow discussion of these aspects during this meeting.

Bissell will prepare weighted brooms and give to the other testing labs and requests that they try them in hopes of using this lighter broom for grooming.

We will require 1 hour at the April 2007 meeting.

**ASTM F11.35.01**
Possible Causes for Differences in Lab Results


The virgin and soiled values from the labs are fairly consistent, but the extracted values differ significantly from lab to lab.

Bissell discussion of possible causes came up with the following possibilities:
- How we got to a ΔE of 12
    - The amount of soiled pellets used per area of carpet
    - The cleaning performance of the vacuum used before extraction
    - The tumbling speed in rpm, diameter, and circumferential speed
    - Time delay between grooming carpets and reading carpets
    - The amount of steel embedding balls used per area of carpet
    - Different vacuuming pattern, number of strokes or speed
- Other possibilities:
    - Extraction stroke speed
    - Time delay between soiling and extraction


It is suggested that other labs have internal brainstorms to develop their own lists of possibilities.

Each lab should answer the following questions and send answers to other members:
1. Carpet panel dimensions
2. Test area dimensions (the area that is actually extracted)
3. Amount of pellets to get to ΔE of 12
4. Amount of steel balls used for embedding
5. Plush carpet F608 score of vacuum used to vacuum soiled carpets
6. Tumbling speed (rpm) and circumferential speed (fpm)
7. Typical time delay between grooming and reading carpets
8. Time delay between soiling and extracting
9. Confirm that F608 pattern, speed, and number of stokes was used for vacuuming
10. Confirm that the extraction stroke speed was 8.0 in/sec

Next Steps to Consider
- Swap soiled carpets between labs
- Swap test units between labs


BISSELL Homecare, Inc.                                          11/19/2006

# CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that she caused a copy of a ***Joint Motion For Entry Of A Consent Decree*** to be served via the Court's electronic filing system, e-mail, and U.S. Mail to:

Kimball R. Anderson
Ronald Y. Rothstein
Stephen P. Durchslag
Tracy J. Allen
Winston & Strawn
35 W. Wacker Drive
Chicago, IL  60601


on this 15th day of February, 2007.

　　　　　　　　　　　　　　　　　　　　__/s/ Dawn M. Beery_____
　　　　　　　　　　　　　　　　　　　　　　　　　Dawn M. Beery